CASE 60—INDICTMENT—DECEMBER—13.

## Vaughan v. Commonwealth.

APPEAL FROM FLOYD CIRCUIT COURT.

</div>

86   431
97   196
86   431
110  354
86   431
122  790
122  791
122  792

DYING DECLARATIONS.—In cases of homicide the statements of the deceased as to the killing are not admissible in evidence as his dying declarations, unless it appears that they were made under a sense of impending death. Something more must appear than a mere belief upon the part of the deceased that he would ultimately die from his injuries.

In this case the statement of the deceased that "he believed he would have to die," was nothing more than the expression of an opinion that the wound he had received would *ultimately* cause his death, and was not sufficient to make his statements as to the killing competent evidence.

WALTER S. HARKINS for appellant.

1. One previously threatened and assaulted may bear arms openly to protect himself, and on casually meeting his adversary, and having reasonable grounds to believe that his life is in immediate danger, and that there are no apparently safe means of escape, may take the life of his adversary without waiting to be attacked. (Oder v. Commonwealth, 80 Ky., 36; Bohannan v. Commonwealth, 8 Bush, 481; Lusby v. Commonwealth, 12 Bush, 1.)

2. When the accused has used proper diligence to secure the attendance of a witness whose testimony is material, the court should continue the case regardless of the speculative effect that the evidence, if produced, might have upon the jury. (Kennedy v. Commonwealth, 14 Bush, 342; Coppage v. Commonwealth, 3 Bush, 532.)

3. The opinion or belief of the deceased is not competent as a dying declaration. The evidence must be such as would be competent if the person were living and testifying. (Collins v. Commonwealth, 12 Bush, 27; Lusby v. Commonwealth, 12 Bush, 2; Luber v. Commonwealth, 9 Bush, 11; Wharton on Crim. Law, secs. 288, 294; Russell on Crimes, 761; Roseal's Crim. Ev., 23; Greenleaf on Ev., sec. 156.)

P. W. HARDIN, Attorney-General, for appellee.

1. The accused is not entitled to a continuance on account of the absence of a witness whose evidence is not material to the issue—nor when there have been numerous continuances on account of the absence of a witness, and there is no reason to believe that the attendance of the witness can be secured.

2. The law of self-defense does not justify one in arming himself and seeking his enemy to kill him, notwithstanding previous assaults and threats by the deceased.

JUDGE BENNETT delivered the opinion of the court.

The appellant was indicted in the Floyd Circuit Court for the murder of Robert Stephens. His trial resulted in his conviction of the crime of manslaughter. His motion for a new trial having been overruled, he has appealed to this court.

Richard Ward was the only witness for the Commonwealth that saw the difficulty between the appellant and Robert Stephens. This witness states that he and Robert Stephens, on Sunday morning, were on their

way to church; that they had left the public road, and were walking along a small pathway which led near the house of the appellant; that this pathway was just outside of the fence which inclosed the appellant's premises; that as they were traveling along the path, near the appellant's house, the appellant presented himself, with gun in hand, just fronting Robert Stephens. That Stephens asked appellant what he meant. To this inquiry the appellent replied: "You get out of this path and into the road;" that Stephens started to go towards the road, and had gone as far as ten or fifteen steps, when the appellant shot him in the back; that Stephens, as he was walking along the path before he met the appellant, and at the time of the meeting and shooting, had a pistol in his hand, but never attempted to use it, nor did he make any hostile demonstrations towards the appellant.

On the other hand, the appellant swears that there had been previous trouble between him and Robert Stephens; that Stephens had frequently threatened to take his life; that he had previously forbidden Stephens to come on his premises; that the path was on his premises, and Stephens knew it; that he saw Stephens from his house, coming along the path, with his pistol in hand; that he took his gun and went to meet Stephens, for the purpose of ordering him off his premises; that when he got near, Stephens asked him what he meant. "I told him to go in the road, off my possessions;" that Stephens said "He would not do it;" that he immediately presented his pistol and snapped it at appellant, and made another effort to shoot; that after Stephens snapped his pistol, but

while he was still endeavoring to shoot, the appellant shot him.

There was other evidence which showed that the appellant and Robert Stephens were enemies, and that each had threatened the life of the other; but, according to the evidence, it seeme that Stephens' threats were direct and violent, while the appellant's threats were generally conditional, such as what he would have to do, or what he would be justified in doing.

The lower court permitted the Commonwealth to prove by Turner Branham what purported to be the dying declarations of Robert Stephens. His evidence is as follows: "He, Stephens, said that he believed he would have to die. He said, I thought I would get away from Burin," meaning the appellant, "without any trouble. I thought he was trying to bluff me, as he had always tried to do."

This evidence tended to strengthen the evidence of Richard Ward as to what occurred at the time of the killing, and to throw the blame upon the appellant in the previous difficulties between him and Robert Stephens. We cannot say that this evidence did not influence the verdict of the jury; on the contrary, it is probable that it did have weight in determining their verdict. Therefore, if the evidence was incompetent, the case must be reversed.

In cases of homicide, where the death of the deceased is the subject of the charge, his dying declarations as to the circumstances of his death are admissible in evidence. But, it is essential to the admissibility of these declarations, and is a preliminary fact, to be proved by the party offering them in evidence, that they

were made under a sense of impending death." * *
"It is the impression of almost immediate dissolution,
and not the rapid succession of death, in point of fact,
that renders the testimony admissible." ·

On the other hand, a mere belief that he will not
recover from his injuries, but that he will ultimately
die from them, is not sufficient to admit his declarations
in evidence. (Greenleaf on Evidence, vol. 1, sec. 158.)

The language of the deceased, to the effect that "he
believed he would have to die," was nothing more than
the expression of an opinion that the wound which he
had received would ultimately cause his death.

We are clearly of the opinion that this evidence was
incompetent, and that its admission was prejudicial to
the rights of the appellant.

The judgment of the lower court is reversed, and
the case is remanded, with directions to grant the ap-
pellant a new trial.